IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRIAN F. DURKIN and )
CRAIG W. RICHARDS, )
)
       Plaintiffs, )    CIVIL ACTION FILE
)
v. )    NUMBER 1:10-cv-2262-TCB
)
ANN PLATZ and RACHEL )
THOMAS HALE, )
)
      Defendants. )

## O R D E R

On January 30, 2013, the Court entered an order (1) granting

Plaintiffs' motion to exclude Defendants' expert testimony on the bases that

Defendants' expert disclosure was untimely and that Blakesley's testimony

was inadmissible under *Daubert*; (2) granting Plaintiffs' motion for

sanctions pursuant to Federal Rule of Civil Procedure 37(c)(1)(A) based on

Defendants' late disclosure and ordering Plaintiffs to submit their

reasonable expenses incurred in connection with their argument that

Defendants' disclosure was late; (3) granting Defendants summary

judgment on Plaintiffs' claims for breach of fiduciary duty, breach of contract, quantum meruit, specific performance, punitive damages, and for a declaratory judgment that Plaintiffs are entitled to market and create a film version of the screenplay free from interference from Defendants; (4) granting in part Defendants' motion for summary judgment on Plaintiffs' claim for attorney's fees; and (5) denying Defendants' motion for summary judgment as to Plaintiffs' claim for a declaratory judgment that (a) Plaintiffs own a copyright in the screenplay, and (b) Plaintiffs' copyright in the screenplay does not infringe Defendants' copyright in the manuscript.

Further, based on the Court's holding that there is no genuine dispute of material fact that (a) Plaintiffs and Defendants are co-owners of the copyright in the screenplay, and (b) Plaintiffs' co-ownership interest in the screenplay does not infringe Defendants' copyright interest in the manuscript, the Court ordered Defendants to show cause why the Court should not enter a declaratory judgment as to that effect. As to Plaintiffs' claim for attorney's fees pursuant to O.C.G.A. § 13-6-11, the Court allowed Plaintiffs to submit any evidence that they contend creates a genuine dispute of material fact that Defendants acted in bad faith.

Following the Court's order, Defendants responded to the show-cause instruction by stating that although they respectfully disagree with the Court's ruling, they agree that based on the Court's holdings there is no genuine dispute of material fact remaining as to Plaintiffs' declaratory-judgment claim.  In Defendants' words, "Defendants hereby acquiesce as to the Court's ruling on the declaratory judgment 'show cause' issues" and "do not attempt to show any further cause in objecting to the Court's ruling to enter declaratory judgment on the issues identified, since Defendants' overall rights in their copyrights have been preserved."  The Court will therefore enter judgment in favor of Plaintiffs to declare that Plaintiffs and Defendants are co-owners of the copyright in the "Snow White Ladies" screenplay, and Plaintiffs' interest in the screenplay does not infringe Defendants' sole copyright ownership in the "Snow White Ladies" manuscript.

Plaintiffs also filed responses to the Court's order.  First, Plaintiffs pointed to evidence that they contend supports their claim for attorneys' fees pursuant to O.C.G.A. § 13-6-11 based on Defendants' bad faith in performance of the parties' contract.  Second, Plaintiffs submitted their expenses incurred in connection with their motion to exclude Defendants'

untimely expert disclosure; within the same filing, Plaintiffs move to recover their expenses incurred in arguing that Defendants' expert's testimony was inadmissible under *Daubert*, arguing that Defendants' counsel has acted in bad faith throughout this litigation by proffering a frivolous *Daubert* report, failing to follow the Local Rule, misrepresenting deposition testimony in Defendants' summary judgment briefing, and making baseless arguments.

## I.    Plaintiffs' Claim for Attorney's Fees Under O.C.G.A. § 13-6-11

In the January 30 Order, the Court stated that it would allow Plaintiffs the opportunity to further brief whether they have produced evidence creating a genuine dispute of material fact as to whether Defendants acted in bad faith pursuant to O.C.G.A. § 13-6-11 in connection with Plaintiffs' claim for a declaratory judgment that (1) they are co-owners of the screenplay, and (2) their copyright in the screenplay does not infringe Defendants' copyright in the manuscript.  The Court explained:

> While the existence of a genuine dispute or a bona fide controversy precludes Plaintiffs from seeking an award of fees under O.C.G.A. § 13-6-11 on the grounds of stubborn litigiousness or causing Plaintiffs unnecessary trouble and expense, it does not foreclose an award of attorney's fees and expenses of litigation based on bad faith.  *See Fid. Nat'l Bank v. Kneller*, 390 S.E.2d 55, 61 (Ga. Ct. App. 1989); *Windermere v.*

> *Bettes*, 438 S.E.2d 406, 409 (Ga. Ct. App. 1993). Therefore,
> despite the existence of a bona fide controversy, Plaintiffs may
> recover attorneys' fees by showing that Defendants acted in bad
> faith in conjunction with Plaintiffs' declaratory judgment claim.

Plaintiffs responded by filing a motion styled "motion for attorneys' fees

pursuant to § 13-6-11" and urging the Court to order Defendants to pay the

entirety of Plaintiffs' fees incurred in this matter: $116,059.51. Plaintiffs

argue that they are entitled to such an award because Defendants acted in

bad faith by (1) acting dishonestly by expressing praise for the Plaintiffs'

work on the screenplay only later to reject it as unsatisfactory, (2) acting

with sinister motives and ill will by "toying" with Defendants and seeking to

"squash" them by surprising them with a legal attack, and (3) acting with

sinister motives when they attempted to coerce Plaintiffs into signing a

work-for-hire agreement, which would have surrendered their rights as co-

owners in the screenplay.

    As an initial matter, whether Plaintiffs should be awarded their

attorney's fees pursuant to O.C.G.A. § 13-6-11 is not an issue for the Court

to determine. As Defendants point out, the awarding of fees under

O.C.G.A. § 13-6-11 is a matter for the fact-finder, *e.g.*, *Citizens & So. Trust

Co. v. Hicks*, 454 S.E.2d 207, 208 (Ga. Ct. App. 1995), and Plaintiffs have

requested a jury trial in this case. Thus, the question of whether Plaintiffs

are entitled to an award of attorney's fees is for the jury to determine. However, before Plaintiffs' claim can go to the jury, the Court must first determine whether they have produced sufficient evidence that there is a genuine issue of material fact for trial on their claim, i.e., whether they have shown that Defendants are not entitled to summary judgment on their claim for attorney's fees related to Plaintiffs' declaratory judgment claim that Plaintiffs own a copyright in the screenplay and that copyright does not infringe Defendants' copyright in the manuscript. The Court finds that they have not.

Bad faith has been defined as "actual or constructive fraud or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake, but prompted by some sinister motive." *ADP-Fin. Computer Servs. v. First Nat'l Bank*, 703 F.2d 1261, 1267 (11th Cir. 1983); *Schaffer v. Wolbe*, 148 S.E.2d 437, 439 (Ga. Ct. App. 1966). The concept of bad faith encompasses a greater scope of misconduct than fraud. *Artzner v. A&A Exterminators, Inc.*, 531 S.E.2d 200, 206 (Ga. Ct. App. 2000).

The bad faith "must have arisen out of the transaction on which the cause of action is predicated. It may be found in how defendant acted in his

dealing with the plaintiff." *City of Gainesville v. Waters*, 574 S.E.2d 638, 644 (Ga. Ct. App. 2002). The bad faith "must relate to the acts in the transaction itself prior to the litigation, not to the conduct during or motive with which a party proceeds in the litigation. *Fresh Floors, Inc. v. Forrest Cambridge Apartments, L.L.C.*, 570 S.E.2d 590, 592 (Ga. Ct. App. 2002). Here, the Court expressly limited Plaintiffs to arguing bad faith related to their declaratory judgment claim that they own a copyright in the screenplay and that their copyright does not infringe Defendants' copyright in the manuscript. Thus, Plaintiffs' claim of bad faith must relate to the business transaction underlying those claims. As explained in the January 30 Order, the relevant business transaction is the parties' written agreement, which the Court held was solely for the creation of a screenplay and did not include an obligation for the parties to together produce a film based on the screenplay. The problem for Plaintiffs is that all of the cited examples of Defendants' bad faith relate to the production of a film rather than creation of the screenplay. Defendants' alleged actions therefore as a matter of law do not constitute bad faith pursuant to O.C.G.A. § 13-6-11.

First, although it is undisputed that Defendants initially praised Plaintiffs' work on the screenplay but later rejected it as unsatisfactory, this

does not constitute bad faith. Plaintiffs rely on *Tattersall Club Corp. v. White*, 501 S.E.2d 851, 855 (Ga. Ct. App. 1998), for the proposition that a sinister or interested motive can be inferred where a defendant expresses no dissatisfaction with the plaintiff's performance, but nevertheless seeks to escape obligations owned to the plaintiff. In *Tattersall*, the defendant employer expressed no dissatisfaction with the plaintiff employee's job performance, and its president described the plaintiff as having done a "pretty good job." *Id.* Nevertheless, the defendant sought to break the plaintiff's employment contract and withhold the plaintiff's duly earned compensation. The court found that the trial court did not err in allowing the jury's award of attorney's fees to the plaintiff because (1) bad faith was evidenced by the defendant's denial of the plaintiff's compensation under the contract and the defendants' forcing the plaintiff to sue to recover what he earned; (2) "interested motive" was shown by the defendant's refusal to pay simply because it disliked the result even though plaintiff had performed as requested; and (3) plaintiff presented evidence of dishonesty in the business transaction, i.e., the defendant had acted dishonestly in its performance of the employment contract.

Here, in contrast to *Tattersal*, Defendants did not deny Plaintiffs any compensation due under the contract, and any dishonesty by Defendants did not relate to the business transaction at issue—the contract to create the screenplay.  Plaintiffs point to Platz's statements: "I agree.  I think it's time to move forward.  I love what you have created with the script.  I agree that we have something very special.  The world needs to laugh.  I know the story will be tweaked more when it's time to refine more."[1]  Plaintiffs also point to the fact that in a March 2010 letter from Defendants' attorney, Defendants told Plaintiffs that the screenplay was unsatisfactory and unmarketable.  This evidence makes clear that Defendants' change of course regarding their satisfaction of the screenplay related solely to the parties' discussion of producing the screenplay into a movie.  But to constitute bad faith Defendants' action must relate to the business transaction at issue.  Here, the relevant transaction is the parties' written agreement, which the Court ruled in the January 30 Order was only for the creation of the screenplay.  The Court made clear that under the contract,

---

[1] Notably, Plaintiffs have not argued that Platz's remarks created an obligation for Defendants to produce the screenplay into a film.  Instead, Plaintiffs' sole argument throughout this lawsuit has been that the parties' written contract evidenced an agreement to make a film based on the screenplay.  In the January 30 Order, the Court rejected this argument, holding that the written agreement did not include a promise to produce the screenplay into a film.

Defendants have no obligation to produce the screenplay into a movie. Thus, unlike in *Tattersal*, where the defendant feigned dissatisfaction in an attempt to avoid its obligation to pay the employee compensation due under the employment agreement, any dishonesty as to Defendants' satisfaction with the screenplay did not relate to an obligation under the parties' contract. In other words, Defendants' claiming dissatisfaction with the screenplay cannot constitute bad faith because it did not relate to the business transaction at issue.

Plaintiffs' second argument—that Defendants acted with sinister motives and ill will by "toying" with Plaintiffs and seeking to "squash" them by surprising them with a legal attack—fails for the same reason. In a March 8, 2010, email, Sean Adorno stated to Platz, "See below, I was toying with him a little (PPM is a legal doc, must be packaged by an attorney, usually costing $10K or so)." The PPM (Private Placement Memorandum) was created by Plaintiffs to use in raising money to produce the screenplay into a movie. Thus, it was related to the production of the film and not to the parties' agreement. Likewise, Platz's email to Adorno on March 6, 2010, clearly related to the PPM and thus to the production of a film. Durkin emailed Adorno saying, "Still waiting for attorney to review our

PPM." Adorno then forwarded the message to Platz, who responded, "He is going to be surprised when he heard from our attorney." This conduct therefore did not relate to the relevant transaction: the contract to create the screenplay.

Plaintiffs also argue that Defendants' sending of a work-for-hire agreement constitutes bad faith. Specifically, they contend that Defendants attempted to "coerce" them into signing the agreement, which would have denied Plaintiffs the fruit of the parties' agreement: copyright ownership in the screenplay. Plaintiffs contend that "Defendants told [us] that [we] had to sign it for the parties to move forward together, in effect trying to defraud [us] inasmuch as Defendants had already decided not to move forward with [us]." What Defendants actually said was: "Rachel and I have to have you sign this form for business purposes. Attached is a draft of a proposed-work-for-hire agreement on the project. We would like to get this paperwork finished before we go any further." Because the screenplay was finished in January 2010, the subsequent emails related to the "project" of producing the film, not creating the screenplay, and thus are irrelevant to bad faith. Additionally, contrary to Plaintiffs' contention that Defendants attempted to coerce them into signing the agreement, Platz's email did not

in any way imply that Defendants would definitely move forward with the project upon the signing of the work-for-hire agreement.

Plaintiffs also argue that evidence that a defendant has attempted to force a plaintiff to give up rights under a contract constitutes bad faith. While this is true, *see, e.g.*, *City of Hoschton v. Horizon Communities*, 697 S.E. 2d 824, 826 (Ga. 2010), Defendants did not even attempt to bait, much less force, Plaintiffs to give up their rights to the screenplay. Defendants honestly stated the nature of the contract—a proposed-work-for-hire agreement—and asked Plaintiffs to sign it. Plaintiffs had the good sense to refuse, and that was the end of the work-for-hire agreement.

In sum, because the Court finds that Plaintiffs have failed to show that there is a genuine dispute of material fact on the claim for attorney's fees pursuant to O.C.G.A. § 13-6-11, the Court grants summary judgment to Defendants on that claim.

## II. Plaintiffs' Submission of Fees and Expenses Incurred in Arguing That Defendants' Expert Disclosure Was Untimely

The Court ruled in the January 30 Order that Plaintiffs are entitled to their reasonable attorney's fees and expenses incurred in arguing that Defendants' expert disclosure should be excluded because it was untimely.

Plaintiffs have submitted fees and expenses totaling $6,125, which includes $4,312.50 for attorney's fees in drafting the lateness portion of the motion, $87.50 in research charges, and $1,725 in attorney's fees "attributable to tasks that [Plaintiffs' attorneys] had to undertake regardless of what arguments were made." A review of Plaintiffs' attorneys' timesheets shows that the $1,725 in additional tasks included conferences with other attorneys regarding strategy, emailing with clients about strategy, and reviewing Defendants' expert report. Defendants object to the fees attributable to review of the expert report, arguing that such review was unnecessary to make Plaintiffs' argument that the report was untimely. The Court agrees and will therefore exclude $632.50, representing 1.1 hours of Plaintiffs' attorney's time, in fees attributable to the review of the report. Accordingly, the Court will award Plaintiffs $5,492.50.

## III.    Plaintiffs' Additional Motion for Additional Sanctions

Finally, in the January 30 Order, the Court noted that should Plaintiffs wish to file a motion for the recovery of their fees and expenses incurred in the filing of their motion to exclude Defendants' expert under

*Daubert*, the Court would entertain the motion.[2]  Consequently, Plaintiffs filed a motion arguing that pursuant to Federal Rule of Civil Procedure 37(c)(1)(A), they should be able to recover all fees caused by Defendants' untimely disclosure.  Alternatively, Plaintiffs contend that they are entitled to those expenses pursuant to the Court's inherent authority and 28 U.S.C. § 1927 because Defendants' attorney acted in bad faith and has been vexatious throughout this litigation.

First, Plaintiffs argue that they were forced to make their *Daubert* challenge at the same time as their timeliness challenge, and thus all of their fees were caused by Defendants' late disclosure and should be recoverable pursuant to Rule 37(c)(1)(A).  The Court disagrees. Other options were available to Plaintiffs.  For example, Plaintiffs could have moved for an extension of time to file a *Daubert* motion until the Court ruled on their motion to strike based on timeliness.[3]  Although such an

---

[2] Defendants argue that Plaintiffs cannot recover under § 1927 because Plaintiffs did not seek sanctions pursuant to that statute in their motion to exclude.  Based on the Court's explicit granting of permission to Plaintiffs to seek sanctions in its Order, Defendants' argument is without merit.

[3] Plaintiffs contend that they are not "soothsayers" and had no way of knowing whether the Court would have granted a motion for extension of time.  The Court rejects this argument for three reasons.  First, Plaintiffs could have contacted the Court and requested an expedited decision regarding whether the extension of time would have been granted and therefore would not have been forced to "soothsay."  Second, Plaintiffs could have sought to file a consent motion for an extension.  Third, based on the Court's

extension would have undoubtedly caused some delay in the case, a delay would have been preferable to Plaintiffs' expending nearly $30,000 arguing the admissibility of Blakesley's testimony under *Daubert* when another potential basis for exclusion existed.  Further, the Court is satisfied that the exclusion of Blakesley's testimony combined with monetary sanctions of $5,492.50 in fees and expenses sufficiently sanctions Defendants for their late disclosure.

The Court also declines to impose sanctions under 28 U.S.C. § 1927. Pursuant to that statute, courts are authorized to require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  It is well established that "the provisions of § 1927, being penal in nature, must be strictly construed."  *Norelus v. Denny's*, 628 F.3d 1270, 1280 (11th Cir. 2010). Section 1927's plain language sets forth three requirements to justify an imposition of sanctions:

    (1)    an attorney must engage in "unreasonable and vexatious" conduct;

---

granting of at least five motions for extension of time in this action, it is unlikely that Plaintiffs' motion would have been denied.

(2)    such "unreasonable and vexatious" conduct must "multipl[y] the proceedings;" and

(3)    the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct.

"An attorney multiplies court proceedings unreasonably and vexatiously, thereby justifying sanctions under 28 U.S.C. § 1927, only when the attorney's conduct is so egregious that it is tantamount to bad faith." *Norelus*, 628 F.3d at 1282 (internal punctuation and citations omitted).

A finding of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims. *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir. 2003). Determination of whether an attorney has acted in bad faith or vexatiously is an objective standard focusing on the attorney's objective conduct, rather than the attorney's subjective intent. *Norelus*, 628 F.3d at 1282. Indeed, "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007). "Determining whether conduct is reckless necessarily involves comparing the conduct objectively against the conduct of a reasonable attorney." *Id.* at 1240.

16

Nevertheless, the attorney's purpose or intent regarding the multiplication of the proceedings is not irrelevant.  *Id.*  "Although the attorney's objective conduct is the focus of the analysis, the attorney's subjective state of mind is frequently an important piece of the calculus, because a given act is more likely to fall outside the bounds of acceptable conduct and therefore be unreasonable and vexatious if it is done with a malicious purpose or intent."  *Id.*  The decision to impose sanctions pursuant to § 1927 is within the sound discretion of the court.  *Peterson v. BMI Refractories,* 124 F.3d 1386, 1390 (11th Cir. 1997).

Plaintiffs argue that Defendants' attorney's bad faith is evidenced by Defendants' "disclosure of an expert they knew (or should have known) would fail *Daubert*, their continued insistence on making baseless arguments unmoored from fact or law, their repeated misrepresentation of deposition testimony during summary judgment briefing, and their flagrant disregard for this Court's summary judgment rules."  Further, Plaintiffs contend that "[a]ll of these actions served no purpose other than to vexatiously multiply the proceedings before this Court."  While Defendants' counsel's conduct has not been without reproach in this litigation (as evidenced by the above imposition of sanctions) the Court does not find

that this conduct rises to the level necessary for a finding of bad faith or
vexatiousness under § 1927.

Plaintiffs cite *In re Silica Products Liability Litigation*, 398
F.Supp.2d 563, 674-76 (S.D. Tex. 2005), as an example of a court imposing
sanctions under § 1927 against a party who filed a frivolous *Daubert*
motion.  But there are several key differences in that case and this one.  In
*Silica*, the court first found that it should have been apparent to the
plaintiff's attorney before he even filed the case that it was medically
impossible for the plaintiffs' diagnoses, upon which they based their action,
to be accurate.  Despite this fact, the attorney filed suit representing the 100
plaintiffs in that litigation and then filed additional cases for 1,900 other
plaintiffs.  The defendants' attorney deposed plaintiffs' expert and
concluded that his diagnoses "were not diagnoses at all" because the expert
had failed to take a medical history of the plaintiffs.  *Id.* at 675.  When the
defendants proffered their own experts, who would testify to the issue
regarding plaintiffs' diagnoses, plaintiffs' attorney moved to exclude the
defendants' experts, opposed the use of independent experts, and
insinuated that defendants had "flipped" plaintiffs' expert.  *Id.*  The court
held that it was plaintiffs' attorney's "continued prosecution of its claims,

and continued insistence that the [silicosis] diagnoses would be proven legitimate at the *Daubert* hearings" that "crossed the rubicon established by § 1927." *Id.* at 675. "Stated differently, Plaintiffs' (including [their attorney's]) insistence upon the *Daubert* hearings multiplied the proceedings unreasonably and vexatiously." *Id.* This was especially true in light of the fact that the attorney knew that the plaintiffs' histories had not been taken correctly. Additionally, the court found important that "the clear motivation for [Plaintiff's attorney's] micro-management of the diagnostic process was to inflate the number of Plaintiffs and claims in order to overwhelm the Defendants and the judicial system." *Id.* at 676.

Here, Defendants' counsel's actions pale in comparison to the attorney's actions in *Silica*. In contrast to the attorney in *Silica*, Defendants' attorney did not file a lawsuit knowing that the cause of action was unfounded, he did not demand a *Daubert* hearing, nor did he manipulate the proceedings for an improper purpose. Rather, Defendants' counsel's mistakes might be more appropriately characterized as blunders based on his own misunderstanding of the relevant law. As explained in *Silica*, "[s]imply proffering an expert who fails *Daubert* is not enough to warrant sanctions." *Id.* at 675. In *Silica*, it was plaintiffs' attorney's

19

"requiring a court and the defendants to undergo a *Daubert* hearing when the plaintiff ha[d] no reasonable basis to believe that the expert [could] pass muster under *Daubert*" that "result[ed] in plaintiff's counsel being liable for the defendant's *Daubert* hearing fees and expenses." *Id.* Although Defendants' attorney seemed to lack an understanding of *Daubert*'s application, there is no indication that he conclusively knew that Defendants' expert would fail under *Daubert*, unlike in *Silica*, where the plaintiffs' attorney knew that the plaintiffs' diagnoses were faulty and would lead to his expert's exclusion yet insisted on a *Daubert* hearing.[4]

Two cases from this Court cited by Plaintiffs, *Maid of the Mist Corp. v. Alcatraz Media, LLC*, No. 1:06-cv-714-ODE, 2010 U.S. Dist. LEXIS 46404, at *3-4 (N.D. Ga. Mar. 2010), and *Fowler v. Merrill*, 1:00-cv-1641, 2006 U.S. Dist. LEXIS 53424, at *7 (N.D. Ga. Aug. 2, 2006), similarly involve behavior much more extreme than that at issue in this case.

In *Maid of Mist*, Judge Evans held:

Windsor's spite and malice toward Plaintiffs motivated the filing of all of these motions.  Windsor's conduct in filing these

---

[4] Further, as explained above, the Court is not convinced that Plaintiffs' *Daubert* motion was necessary.  For the sake of completeness, the Court ruled on both the motion to exclude for timeliness and the *Daubert* challenge.  However, as Defendants point out, a decision on the *Daubert* motion was not required once the Court struck the expert report as untimely.

> motions has been highly willful and wanton, objectively
> unreasonable, and has vexatiously and unreasonably multiplied
> the proceedings in this closed case and the expenses incurred to
> date by Plaintiffs. Windsor's conduct in filing these motions
> has also disrupted the efficient management of this Court's
> docket, has threatened to disrupt the finality of the Consent
> Final Order and Judgment and other orders previously entered
> in this case, and has repeatedly dragged Plaintiffs back into a
> lawsuit in which they prevailed on the merits nearly three years
> ago.

2010 U.S. Dist. LEXIS 46404, at *3-4. Unlike the defendant in *Maid of Mist*, Defendants' counsel has not acted with spite or malice, and in fact, Defendants actually prevailed on most of their claims. And although Defendants' counsel's failure to follow the Local Rules caused delays in the Court's determination of the undisputed material facts in this action, his actions do not rise to the level of disrupting the Court's management of its docket.

In *Fowler*, Judge Tidwell sanctioned the plaintiff's lawyer where he had no basis in law to bring the lawsuit because the lawsuit was specifically precluded by an injunction order, which the attorney admitted to having reviewed; the defense attorney cautioned plaintiff's attorney that he would seek sanctions based on the abusive nature of the suit; plaintiff's attorney admitted that he had failed to investigate the relevant law and statute of limitations, which expressly barred plaintiff's claims; and plaintiff's

attorney "repeated[ly] fail[ed] to recognize and explore problems in his case [after] the action was filed."  2006 U.S. Dist. LEXIS No. 53424, at *17. Contrary to the lawyer in *Fowler*, the letters between Defendants' attorney and Plaintiffs' attorney show that Defendants' attorney investigated the relevant law before this lawsuit was filed.  The Court, of course, disagreed with his interpretation of the law regarding Plaintiffs' first two claims for declaratory relief.  However, "[f]or sanctions under section 1927 to be appropriate, something more than a lack of merit is required." *Schwartz*, 341 F.3d at 1225.

As to fees under the Court's inherent authority, the Court has "the ability to assess attorneys' fees and costs against the client or his attorney, or both, when either has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . . [T]he key to unlocking a court's inherent power is a finding of bad faith." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001). Because Plaintiffs have not shown bad faith under § 1927, the Court will not sanction Defendants' counsel under its inherent power either.

Accordingly, although the Court is sympathetic to Plaintiffs' frustrations in this litigation, the Court does not find that Defendants'

counsel's actions constitute bad faith and thus declines to impose sanctions pursuant to § 1927 or the Court's inherent authority.

## IV.    Conclusion

For the reasons set forth above the Court (1) DECLARES that Plaintiffs and Defendants are co-owners of the copyright in the "Snow White Ladies" screenplay, and Plaintiffs' interest in the screenplay does not infringe Defendants' sole copyright ownership in the "Snow White Ladies" manuscript; (2) GRANTS Defendants' motion for summary judgment on Plaintiffs' claim for attorney's fees under O.C.G.A. § 13-6-11 [89]; DENIES Plaintiffs' additional motion for sanctions [116]; and awards Plaintiffs $5,492.50 in attorneys' fees and expenses pursuant to its January 30 Order imposing sanctions based on Defendants' late disclosure of their expert witness.

There being no outstanding matters in this action, the Clerk is DIRECTED to close the case.

IT IS SO ORDERED this 8th day of May, 2013.

_____
Timothy C. Batten, Sr.
United States District Judge